DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Michele V. Delaine, ) | |
| ) | CASE NO. 1:13 CV 1831 |
| Defendant-Petitioner, ) | (Criminal Case No. 1:11 CR 226) |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| United States of America, ) | |
| ) | |
| Plaintiff-Respondent. ) | |
| ) | |

The petitioner seeks habeas relief pursuant to 28 U.S.C. § 2255 from her November 30, 2011 conviction and sentence for two counts of embezzlement and conversion of government funds in violation of 18 U.S.C. § 641.

One count referenced the allegation that the petitioner stole $31,694 from the Social Security Administration, and the second count alleged that the petitioner stole $57,619 from the Civil Service Retirement System.

The Court sentenced the petitioner to a term of 18 months imprisonment and ordered restitution of the above-described sums, together with supervised release for three years.

On appeal, the petitioner's sentence and conviction were affirmed.

The petitioner now seeks habeas relief based on the proposition that she was denied the effective assistance of counsel in several respects. First, the petitioner claims that her trial counsel failed to move for a mistrial when the assistant United States attorney was permitted to speak with a witness about his testimony during a recess in testimony, all of which was conducted off the record.

(1:13 CV 1831 and
1:11 CR 226)

Second, the petitioner contends her trial counsel failed to supply counsel for the government with discovery that was key to the petitioner's defense resulting in the exclusion of such evidence.

Third, the petitioner contends that her trial counsel failed to submit a sentencing memorandum in mitigation of the petitioner's conduct.

Finally, petitioner contends that she was denied due process as a result of prosecutorial misconduct by the United States Attorney.

Counsel for the government has filed a memorandum brief in opposition (ECF 58) and counsel for the defendant filed a timely reply brief.

### I. A Brief Description of the Factual Background Leading to the Petitioner's Conviction

The Sixth Circuit's unpublished decision contains an accurate description of the factual background leading to the petitioner's conviction and as follows:

> Defendant met Albert Smith, a former NASA scientist, through their mutual membership in a congregation of Jehovah's Witnesses. During the last few years of Mr. Smith's life, Defendant assisted him in personal and financial tasks, including taking him to appointments with doctors. In 2002, Mr. Smith added Defendant as a signatory to a joint checking account with the right of survivorship at National City Bank ("Account 9833"). Payments from the Social Security Administration and from the Civil Service Retirement System were deposited directly into this account. Mr. Smith also created a trust for his other assets, and named Bruce Morrison, another member of his church, as trustee. Defendant assisted Mr. Smith in creating the trust by gathering information, but contends that she was not involved in its organization, management, or distribution. (Def. Br. at 5.) At trial, defendant did admit that she met with Smith and an attorney about one month before Smith's death, and at that meeting, Smith

2

(1:13 CV 1831 and
1:11 CR 226)

>increased Defendant's distribution from the trust.  (Gov't Br. at 4-5.)

>During the last two weeks of his life, Defendant lived with Mr. Smith so that she could provide care for him.  After his death, in April 2006, Defendant continued to live in Mr. Smith's house, through an agreement with Mr. Morrison, so that the house would be protected from vandalism and kept up before it was sold during the winding-up of Mr. Smith's estate.  She lived in the house until April 2007, when it was sold.  During this period, she paid the utility and maintenance bills for the house.  (Gov't Brf. at 5.)  Because it was a joint account with the right of survivorship, Account 9833 did not pass through Mr. Smith's estate.  Defendant received her initial distribution of $100,000 from the estate in October 2007.  In February 2009, she received her final distribution of $17,000.  (Gov't br. at 6.)

>In early 2011, Laura DeGiglio, an investigator with the Social Security Administration, received a phone call from Victore Janezic, an agent with NASA's office of the Inspector General, who had performed an audit of the Smith and Delaine accounts. He discovered that after Mr. Smith died, the Civil Service Retirement System continued to make deposits into Account 9833. The payments continued until June 2007, and totaled $57,619.71. Janezic also noticed that Social Security payments totaling $31,594 continued until December 2009.  He further noticed that there had been $99,726,49 [sic] in withdrawals from Account 9833 after Mr. Smith's death, of which $82,441.39 had been transferred to other accounts belonging to Defendant.  There was also a gap between transfers from Account 9833 to Defendant's other accounts, which ended in October 2007, which was when Defendant received her $100,000 disbursement from Smith's estate.  (Gov't Br. at 7.)

>At trial,  a bank official testified that Defendant had been a holder of Account 9833, and that after Smith's death, she was the only person authorized to use the account.  The official also stated that Defendant had opened other accounts, for which she was the sole holder, and to which transfers were made from Account 9833. Morrison testified as to the arrangements made for the house and the disbursement from Smith's estate.  Janezic testified to the

3

(1:13 CV 1831 and
1:11 CR 226)

> payments made into account 9833 after Smith's death, and to the amount of the withdrawals from that account. Finally, DeGiglio testified as to her investigation, including the fact that social security payments continued after the house had been sold. Delaine testified on her own behalf, and claimed that she thought that the pension payments were part of the trust. On cross-examination, Delaine admitted that she had forged Smith's signature on checks deposited into the account. At the conclusion of the defense case, Defendant renewed her Rule 29 motion, which was denied again. The jury convicted Defendant on both accounts, and this appeal followed.
>
> II. Was the Petitioner Denied the Effective Assistance of Counsel
> When Her Trial Counsel Failed to Move for a Mistrial?

Counsel for the government was attempting through a witness by the name of Morrison to trace the creation of a trust which eventually resulted in assets being transferred to the defendant. However, counsel for the government was having trouble eliciting the accurate information from the witness. The Court took a brief recess and stated:

> THE COURT: Well, it sounds to me like the ultimate conclusion is that your client, the defendant, received most of the assets of the trust when the smoke cleared, which is separate and apart from the claims here, which is that your client then was able to get come control over the Social Security and retirement benefits and treated it as her own. That's the government's case.
>
> And that's separate and apart from the trust issues, as I under stand it. Am I wrong?

Then in response to the Court's question, the following discussion apepars in the record and at the time when the jury was not in the courtroom:

> MR. KERN: Well, part of the issue, Your Honor, and this is based on representations that have been made by -- well, by the defendant in her interview to the Social Security agent, and in discussions with mr. Gasper, is that we anticipate -- her story was

4

(1:13 CV 1831 and
1:11 CR 226)

        that she didn't know where the money was coming from that went into that account, and she thought that the trust was putting money into the account to pay the bills.

        And we anticipated the testimony that Mr. Morrison would be as far as the fact that there was the trust, who was supposed to get the trust assets, and the fact that he never put money into an account for her to pay any expenses.

        THE COURT:      Well, all I'm trying to do is not have this drag out for three days while we try to get Mr. Morrison to understand what happened.

        MR. KERN:      I fully agree.

        THE COURT:      Why don't we take a brief recess and see if you can get him to figure out what happened and testify to it quickly. Because apparently, the defendant doesn't want to stipulate.

After the recess was completed and before the witness Morrison continued with his testimony, counsel for the defendant objected to the government having the opportunity to discuss the matter with the witness Morrison.

The Court then questioned defendant's counsel as to whether he wanted a mistrial, and counsel for the defendant answered in the negative, and at that time, the Court overruled defense counsel's motion. ECF 40, pg. 280.

Once counsel for the defendant indicated that he did not want to move for mistrial, the Court had no power to order a mistrial because the defendant was jeopardy. New counsel for the defendant now speculates, apparently, that had trial counsel moved for mistrial, the Court would have granted the same. At this point in the proceedings, some substantial time later, this Court has no way of knowing how it would have ruled had trial counsel moved for a mistrial.

5

(1:13 CV 1831 and
1:11 CR 226)

However, to contend that the petitioner was denied the effective assistance of counsel when her trial counsel made the strategic decision not to move for mistrial, is beyond defective analysis. Consequently, the Court finds that the first allegation that the petitioner was denied the effective assistance of counsel is without merit and is DENIED.

### III. Did Petitioner's Counsel Fail to Supply Counsel for the Government With Discovery?

Petitioner's counsel, in support of the claim that petitioner's trial counsel failed to supply the government with discovery, denied her the opportunity to present an appropriate defense. On the third day of the trial, counsel for the government, prior to the jury being ushered into the courtroom, made an objection to the late production of discovery.[1] Specifically, counsel for the government described the exhibits as appearing to relate to powers of attorney for health care, powers of attorney for asset management and "something called settling the estate." Government's counsel's motion to exclude the documents was sustained after counsel for the petitioner described the documents as follows:

> It goes to the credibility of their witnesses, and that when they're indicating that my client was puffing about whatever power she may or may not have. This documentation indicates that there was a power of attorney; she was second on it. There was a durable power of attorney for health; she was second on it. And disposition of the trust, which was testimony brought up by the government, is spelled out in document 1, where Bruce Morrison appeared to be reluctant to tell us about what happened --

In response to the claimed error, counsel for the government points out that petitioner's

---

[1] See pg. 430 of the transcript (ECF 41).

6

(1:13 CV 1831 and
1:11 CR 226)

direct appeal to the Sixth Circuit claimed in her direct appeal to the Sixth Circuit that the documents in question established that the petitioner "had a power of attorney over a variety of Mr. Smith's health and asset management." Against that background, counsel for the government argues that the documents at issue actually supported the government's theory of the case that the petitioner had knowledge of Mr. Smith's financial affairs at a point when she was named on the joint savings account of Mr. Smith. Continuing, the government argues that the documents in question did establish that the petitioner had some legal power over Smith's affairs when he was alive and actually supports the government theory of the case.

Counsel for the petitioner contends that the petitioner was denied the effective assistance of counsel when petitioner's trial counsel failed to supply opposing counsel with discovery that was key to the petitioner's case and in which was then excluded from the record.

The Court published an order on November 21, 2013 (ECF 59) indicating that it would explore the above-described issue in oral argument to be conducted on November 27, 2013.

The oral argument was conducted as scheduled. Counsel for the petitioner bases his argument on the proposition that petitioner's trial counsel should have provided in pretrial discovery the durable general power of attorney for asset management on which the petitioner was described as the alternate agent. The first page of the durable general power of attorney for asset management is attached hereto as Appendix I.

The durable power of attorney was for Albert B. Smith. Albert B. Smith was the beneficiary with respect to government retirement payments and also Social Security payments. Upon his death, the durable power of attorney terminated.

(1:13 CV 1831 and
1:11 CR 226)

Against that background, the Court finds that there is no basis for the petitioner's claim that she was denied the effective assistance of counsel when petitioner's trial counsel failed to disclose by way of reciprocal discovery with what is now described as defendant's Exhibit B and attached hereto as Appendix I..

Consequently, counsel for the government argues that petitioner's trial counsel for not ineffective for choosing not to disclose Exhibit B.

The Court finds that the petitioner is unable to overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See Strickland v. Washington*, 466 US 668, 689 (1984).

### IV. Did Petitioner's Trial Counsel Deny Petitioner the Effective Assistance of Counsel By Failing to Submit a Sentencing Memorandum?

The Court has reviewed the transcript of the sentencing proceedings conducted on April 17, 2012. ECF 42). The Court initially determined that the sentencing range was 15 to 21 months with counsels' agreement. Then the defendant engaged in allocution beginning at page seven of the transcript through page 17. Thereafter, at page 20 of the transcript, counsel for the petitioner moved the Court to vary downward based on the petitioner's statement in allocution. Counsel for the government opposed the downward variance, and after considering the same, the Court denied the motion for a downward variance and sentenced the defendant within the advisory guideline range.

The Court finds that the petitioner's trial counsel did not deny the petitioner the effective assistance of counsel by failing to submit a sentencing memorandum in view of the fact that after

8

(1:13 CV 1831 and
1:11 CR 226)

the petitioner made an eloquent statement in the exercise of her allocution rights, trial counsel for the petitioner made an oral motion for a downward variance and as supported by the statement in allocution by the petitioner. Consequently, the Court is of the view that petitioner's claim that she was denied the effective assistance of counsel by her trial counsel's failure to submit a sentencing memorandum is without merit.

### V. Was the petitioner Denied Due Process as a Result of Alleged Prosecutorial Misconduct by the United States Attorney?

Counsel for the government presented the argument that the evidence presented on behalf of the government was sufficient to justify guilty verdicts. Such an argument does not violate due process.

### VI. Conclusion

Based on the foregoing analysis, the Court concludes that the petitioner has failed to justify the issuance of the writ to vacate her conviction and sentence and the Court's judgment entry will so disclose.

The Court grants the petitioner a certificate of appealability on the issue of whether petitioner's constitutional right to the effective assistance of counsel was denied when petitioner's trial counsel failed to move for a mistrial following the Court's granting of a recess

(1:13 CV 1831 and
1:11 CR 226)

so counsel for the government would have the opportunity to review the testimony of the witness Morrison in the absence of the jury and prior to the additional testimony of the witness Morrison being presented to the jury.

  IT IS SO ORDERED.

| | |
|---|---|
|  December 5, 2013 |  */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |